NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL ARTHUR, | : | |
| Petitioner, | : | Civ. No. 02-5478 (WGB) |
| V. | : | |
| ATTORNEY GENERAL of New Jersey, | : | O P I N I O N |
| Respondent. | : | |

APPEARANCE:

Michael Arthur
Prisoner Number 408180
88 Conover Road
P.O. Box "B"
Marlboro, N.J. 07746

Petitioner Pro Se

Stephen J. Kaflowitz
Assistant Prosecutor
Union County Prosecutor's Office
32 Rahway Avenue
Elizabeth, NJ 07202

Attorney for Respondent

**Bassler, Senior District Judge:**

Petitioner Michael Arthur ("Petitioner"), a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2554 against the Attorney General of New Jersey ("the

State"). Petitioner was convicted in the Superior Court of New Jersey on five counts, later merged into two counts, of distribution and possession with intent to distribute cocaine within five hundred feet of a public park. Petitioner was sentenced to two concurrent extended terms of fifteen years imprisonment with a five year parole disqualifier. After failed attempts to appeal his conviction in the Appellate Division and the New Jersey Supreme Court, Petitioner now seeks habeas corpus relief from this Court. He presents to the Court the same five points he presented to the state courts on appeal. For the reasons set forth in this Opinion, the Court **denies** Petitioner's petition for habeas corpus relief.

I. <u>BACKGROUND</u>

On April 5, 2000, a jury convicted Petitioner before the Honorable Walter R. Barisonek in the New Jersey State Superior Court. The verdict contained five counts: Count I - distribution of cocaine, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3); Count II - distribution of cocaine within 500 feet of a public park, in violation of N.J.S.A. 2C:35-7.1; Count III - possession of cocaine, in violation of N.J.S.A. 2C: 35-10(a); Count IV - possession with intent to distribute cocaine, in violation of N.J.S.A. 2C: 35-5a(1) and 2C:35-5b(3); and Count V - possession with intent to distribute cocaine within 500 feet of a public park, in violation of N.J.S.A. 2C: 35-7.1.

2

After the verdict the State moved for extended terms pursuant to N.J.S.A. 2C:43-6(f).  Petitioner conceded his eligibility for extended terms.  At the sentencing hearing on June 9, 2000, Judge Barisonek granted the State's motion for extended terms.  Judge Barisonek then merged Count I with II and Count III with IV and V, and imposed two concurrent 15-year extended prison terms with a five-year parole disqualifier in addition to the fines assessed against Petitioner.

Petitioner then filed for Post Conviction Relief (PCR). Although the outcome of the PCR is still pending in New Jersey Supreme Court, it is irrelevant for the present petition.  The complaint in the PCR differs from the claims presented to this Court, and Petitioner has since filed for direct appeal in the state courts.  In his appeal to the Superior Court of New Jersey Appellate Division, Petitioner laid out five points; he included an additional point in his supplemental pro se brief.  Petitioner contented:

I. The Prosecutor's summation exceeded the bounds of propriety.

II. Petitioner was denied his right to a fair trial as a result of testimony elicited from two police officers that inferentially connected Petitioner with other criminal conduct.

III. Petitioner is entitled to a remand for a determination

3

as to the reasons for the State's decision to seek an
extended term and whether such a decision was arbitrary and
capricious.

IV. The sentence imposed was manifestly excessive.

V. The trial court's imposition of a second extended term
with respect to counts III, IV, and V, which were merged for
the proposed of sentencing was illegal.

VI. The Persistent Offender statute is unconstitutional.

On April 23, 2002, the Appellate Division in a per curiam opinion
dismissed all points raised by Petitioner as "without sufficient
merit."  See State v. Arthur, A-1892-00T4, at 3 (N.J. Super. App.
Div. Apr. 23, 2002).

Petitioner subsequently petitioned for certification with
the Supreme Court of New Jersey and was denied certification on
October 8, 2002.  After exhausting all state remedies for relief,
Petitioner filed this petition on November 14, 2002 for writ of
habeas corpus pursuant to 28 U.S.C. § 2254 (2000).  Petitioner
now raises the same five points he presented to the Appellate
Division, and he relies on the briefs filed before the state
courts.  In light of Petitioner proceeding pro se, the Court will
decipher and decide any reasonable federal law and constitutional
issue raised in the petition and will consider the supplemental
brief, even though it was not listed in the petition.

4

II. <u>DISCUSSION</u>

   A. <u>Standard of Review</u>

   The threshold requirement for a federal habeas review is that Petitioner must have exhausted all available state remedies. 28 U.S.C. § 2254(b)(1).  "To satisfy the exhausting requirement Petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court." <u>Stevens v. Del. Corr. Ctr.</u>, 295 F.3d 361, 369 (3d Cir. 2002) (quoting <u>Whitney v. Horn</u>, 280 F.3d 240, 250 (3d Cir. 2002)); <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971).  When Petitioner has presented to the state court "in substance" the same claim he seeks for review by the federal court, he has exhausted his state remedies, even if the state court "fails to rule on the merits of a claim."  <u>Johnson v. Pinchak</u>, 392 F.3d 551, 555 (3d Cir. 2004); <u>see Picard</u>, 404 U.S. at 276;  <u>Swanger v. Zimmerman</u>, 750 F.2d 291, 295 (3d Cir. 1984).

   Here, Petitioner has satisfied the exhaustion requirement. Pursuant to <u>Stevens</u>, Petitioner fairly presented the same arguments to the New Jersey Supreme Court as he presented to this Court.  The Appellate Division denied Petitioner's appeal on the merits of the case.  The New Jersey Supreme Court then denied certification of the appeal.  As required by <u>Johnson</u>, the claims were identical throughout his appeal in the state courts and to this Court.  Thus, Petitioner has exhausted the state remedies.

The next step is to consider the standard of review for a federal court. 28 U.S.C. § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The facts in this case are supported by the evidence and are not in dispute; therefore, the Court will presume the state court's finding of facts to be correct. Ahmad v. Redman, 782 F.2d 409, 411-12 (3d Cir. 1986). § 2254(d)(2) is thus inapplicable for the purpose of this appeal.

With regard to § 2254(d)(1), the Third Circuit Court of Appeals further clarified the standard by enunciating a two part test:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." [citation omitted] [Second,][i]n the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an out come that cannot reasonably be justified. If so, then the petition should be granted.

6

<u>Matteo v. Superintendent, SCF Albion,</u> 171 F. 3d. 877, 891 (3d Cir. 1999);  <u>see</u> <u>also</u> <u>William v. Taylor</u>, 529 U.S. 362, 389 (2000) (federal court can only review a state court judgment if it is "firmly convinced that a federal constitutional right has been violated").  In applying the two-part test the federal habeas court's main inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. <u>Id.</u> at 888.  When the Supreme Court has not addressed the issue, precedents of lower federal courts are not enough to meet the "as determined by the Supreme Court of the United States" requirement in 28 U.S.C. § 2254(d)(1).  <u>Id.</u> at 890.  Furthermore, for the second step, a federal habeas court cannot grant the habeas petition because of "mere disagreement with the state court's conclusion." <u>Id.</u> at 890.

    B. <u>Petitioner's Arguments</u>

    As stated above, Petitioner incorporates six arguments into his petition for a writ of habeas corpus.  The court will address each argument in turn.

    _____Point I. <u>Prosecutor's summation exceeded the</u>
    _____    <u>bounds of propriety.</u>

    Petitioner contends that he was denied a fair trial because the prosecutor made inappropriate comments on three occasions during the closing argument.  He claims the statements undermined the trial.  Because the alleged impropriety occurred during the

course of the trial, Petitioner alleges a trial error, and the
Court must determine the harmfulness of the errors. <u>Brecht v.
Abrahamson</u>, 507 U.S. 619, 629-30 (1993).  The standard for
determining whether habeas corpus relief must be granted for
constitutional errors of the trial type is whether the error had
substantial and injurious effect or influence in determining the
jury's verdict.  <u>Id.</u> at 637-38 (citing <u>Kotteakos v. United
States</u>, 328 U.S. 750, 776 (1946)).  The Court will first examine
each occasion raised by the petitioner and then determine the
aggregate effect on the trial.

       1. <u>Prosecutor violated the Fifth Amendment.</u>

     Petitioner first takes issue with the prosecutor's statement
that there was no evidence to contradict the police officers'
testimony.  Petitioner argues that the statement by the
prosecutor can only be construed as a reference to Petitioner not
testifying.  Petitioner contends that such indirect comment by
the prosecutor is impermissible and "cannot be regarded as
harmless error" because it infringed upon his Fifth Amendment
privilege against self-incrimination.  (Br. of Pet. at 9.)
Petitioner relied on the case of <u>Griffin v. California</u>, 380 U.S.
609 (1965), as the sole basis of Supreme Court precedent for this
argument.

     In <u>Griffin</u>, the Court clearly "forb[ade]... comment by the
prosecution on the accused's silence," and extended the rule to

all state courts through the Fourteenth Amendment.  <u>Id.</u> at 61. Furthermore, in <u>United States v. Robinson</u>, the Supreme Court held that when the prosecutor "on his own initiative" negatively influences the jury by referencing Petitioner's refusal to take the stand, the prosecutor's conduct violates the Fifth Amendment. 485 U.S. 25, 32 (1978).  Conversely, if the prosecutor's comment "is a fair response" to Petitioner's statements, then it does not violate the Constitution.  <u>Id.</u>; <u>see also</u> <u>Lockett v. Ohio</u>, 438 U.S. 586, 595 (1978) (prosecutor's remarks about defendant not testifying did not violate defendant's Fifth Amendment right because defense counsel had already brought the silence to jury's attention).

In this case, the prosecutor was simply responding to an argument made by defense counsel.  Petitioner's counsel in his summation attacked the credibility of the police officers, and undermined the integrity of the testimony of Detective Carrier, a witness for the State.  For instance, defense counsel told the jury:

> ... you are basically going to be asked to believe one version over the other and in the event that you're inclined to believe Miss Crittenden and her version, which I submit is the true version, it's a very jarring reality that we all have to accept.  The fact that we have to now discount what is otherwise compromised testimony of a police officer [Detective Carrier] is a very difficult thing to do, it is very jarring.  It upsets us to the core to hear a police officer get on the stand, tell you a version of facts that is patently untrue.

(4/15/00 Tr. (2T), at 41:17-42:1.)

  When we have his [Detective Carrier's] word versus
Miss Crittenden, who is alleging Crawford is making
this up, there is a fundamental problem in
corroboration.  We have no one to corroborate this and
that is problematic, it really is."

(Id. at 50:20-24.) In response, the prosecutor attempted to

reestablish the truthfulness of the police officer's

testimony by stating: "There is no evidence that contradicts

what Detective Crawford the [sic] said he saw, no evidence

before you whatsoever." (Id. at 55:19-21.) Petitioner argues

that the statement impliedly referred to his failure to

testify and thus violated his Fifth Amendment right against

self-incrimination.

  The Appellate Division correctly concluded that the

prosecutor did not err by making the statement because the

statement did not implicate defendant's right to testify.

Furthermore, the trial court mitigated any possible adverse

effect by instructing the jury "at length" not to draw

inferences against Petitioner for not testifying.  Arthur, A-

1892-00T4, at 5.  Even if the contested statement were a

comment on Petitioner's failure to testify, it is still

constitutional under Robinson.  The prosecutor made the

comment in response to defense counsel's proposition that

Detective Carrier's testimony was false; the prosecutor did

not raise it by "[her] own initiative. " Robinson, 485 U.S.

at 32.   Thus, the Appellate Division's rejection of

Petitioner's first contention is consistent with Supreme

Court precedent.

2.   <u>Prosecutor made inference not based in</u>

<u>evidence.</u>

The second statement in question is the prosecutor's

suggestion of a plausible explanation for the pink tinge in

some of the vials seized from Petitioner:

> Ladies and gentlemen, when Detective Carrier said,
> "I picked them [the vials] up and I looked at them and
> they were the same," he is telling you the truth.   Why
> is there a pink tinge? Because the lab took some
> specimens and they determined by adding different
> additives to the specimen of the vial of the buyer that
> that [sic] vial was, in fact, cocaine.

(4/15/00 Tr. (2T) at 57:21-58:2.) Petitioner correctly

points out that the suggested explanation for the pink tinge

was not based on any testimony.   He contends that the remark

was used to influence the jury as to the credibility of the

police officer.   (Br. of Pet. at 10.)

But this statement has no constitutional consequences

because the trial court sustained the objection and

instructed the jury to disregard the comment.   (4/15/00 Tr.

(2T) at 58:4-11.)   <u>See</u> <u>Young</u>, 470 U.S. at 13 (defendant

should object to inappropriate comment by the prosecutor). It

is presumed that a jury will follow the instructions of the

court.   <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000);

11

<u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).   The judgment
of the Appellate Division of no perceived error is consistent
with Supreme Court precedent.

    3.  <u>The Prosecutor improperly used witness's</u>
<u>occupation to establish credibility.</u>

The third and the last statement to which Petitioner
objects is a statement made by the prosecutor during her
effort to reestablish the police officers' credibility.   In
response to the defense counsel's accusation that the police
officers testified falsely, an example of which was
reproduced in the Point I(1), the prosecutor asked the jury
"Why would the officers come in here and lie to you about
what they said [seeing person come in and put the package
down and return later]? " (4/15/00 Tr. (2T) at 58:18-19.)

Petitioner believes the comment improperly bolstered the
credibility of the police officers' testimony by implying
that police officers would not lie under oath.   (Br. of Pet.
at 10.) The Court does not find this argument to be
persuasive.   Even on its face, the comment appears to be a
response to an attack on the officers' credibility, rather
than a direct bolstering of their testimony.

In the interest of prudence, however, the court will
assume that the remark was meant to establish the credibility
of the police officers by invoking their status as law

enforcement.  Nonetheless, such a statement can be justified under the "invited response" doctrine.  According to the "invited response" test enunciated in Lawn v. United States, 355 U.S. 339 (1958), and then in United States v. Young, 470 U.S. 1, 12 (1984), the appropriateness of the prosecutor's response must be determined in the context of what the defense counsel had argued.  For example, in United States v. Pungitore, 910 F.2d 1084, 1125 (3d Cir. 1990), the court held that the prosecutor inappropriately invoked his oath of office to defend a witness's credibility.  According to the invited response doctrine, however, the prosecutor's comment did not require a new trial: when an argument is made "in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out." Id. at 1126.

Here, the comment by the prosecutor is a "reasonable response" to the attacks by the defense counsel.  Id. at 1126.  The defense counsel focused his closing summation on discrediting the police officers.  In the context of summation as the State argued in its brief, the prosecutor "would have been remiss had she not emphasized the absence of evidence of any motive for her witness to lie." (Br. of Respt. at 11.) Thus, this would be, at best, two arguments "balancing each other out".  Pungitore, 910 F.2d at 1126.

Overall, the Court finds no harmful error in the trial court's handling of the summation by the prosecutor.  First, the Court is not persuaded the trial court committed any error in the three instances Petitioner raises.  Second, even assuming there were error, the errors did not impair the integrity of thhe trial.

Point II.  <u>Petitioner was denied a fair trial by the police's testimony of prior knowledge of Petitioner.</u>

In his second point, Petitioner claims his Fourteenth Amendment due process right was violated by police officers' answers during direct examination.  Detective Crawford and Detective Carrier both answered a question from the prosecutor by positively identifying Petitioner by name.

  Question [to Detective Crawford]: And what, if anything did you observe?
  Answer [Detective Crawford]: I observed a black male who is known to me, Mr. Arthur, to my right.

  (4/4/00 Tr. at 29:12-14.)

  Question [to Detective Carrier]: Now, did Detective Crawford give you a description of the two individuals?
  Answer {Detective Carrier]: Yes, he did.
  Question: And what description did he give you?
  Answer: He described two individuals, one as a heavyset black female wearing black pants and a black and orange T-shirt, and another individual, which was know to him and myself as Michael Arthur, and gave a clothing description of wearing all blue jeans.

(<u>Id.</u> at 69:11-19.) Petitioner claims the identification suggested he had previous contact with the police, which

14

insinuates prior criminal conduct, and such inference prejudiced the jury in their deliberation.  (Br. of Pet. at 12-14.)

When Petitioner calls in question the fairness of the trial because of the prosecutor's questions, it is important to "place th[e] remar[k] in context." Greer v. Miller, 483 U.S. 756, 765-66, (1987) (quoting Darden v. Wainwright, 477 U.S. 168, 179 (1986)).  First, the Appellate Division correctly determined that the police statements "did not indicate in any way that they [Detective Crawford and Detective Carrier] knew him [Petitioner] as a result of enforcing the criminal laws." Arthur, A-1892-00T4, at 6.  In the context of the direct examination, the police officers were only identifying Petitioner.  Moreover, defense counsel could have but did not object or attempt to dispel any adverse inference during cross examination or even recross examination.

Second, during the direct examination of Detective Carrier the court instructed the jury not to draw any adverse inference from the officers' knowledge of the Petitioner and his brother.  (4/4/00 Tr. at 64:5-12.)  As stated before, the Supreme Court requires courts to presume that the jury will follow the court's instruction. Weeks, 528 U.S. at 234.  The presumption is overcome only when there is an "overwhelming

15

probability" that the jury will not be able to follow the instruction, <u>Richardson</u>, 481 U.S. at 208, and a strong likelihood that the evidence would have a "devastating" effect on the defendant, <u>Burton v. United States</u>, 391 U.S. 123, 136 (1968).  Petitioner has not submitted any evidence to suggest that such a situation exists here.  The Court presumes the jury followed the trial judges' instruction and that any prejudice from the detectives' comments was cured by the instruction.

Judging the remarks in the context of the trial, Petitioner's lack of objection and the court's instruction to the jury justify the Appellate Division's conclusion that there was no perceived error.

Point III.  <u>Petitioner's due process right was</u> <u>violated by prosecution's failure to state a</u> <u>legitimate reason to seek extended term.</u>

In his third point, Petitioner argues that his case should be remanded to the jury for sentencing because the prosecutor failed to provide legitimate reasons for why the State sought an extended term of incarceration.  Even though this is a state law issue the Court will review the claim as a violation of the Fourteenth Amendment due process clause.

In cases applying a state law, the federal courts, including the Supreme Court, are bound by the construction of

16

the highest court in the State where the law applies.
Johnson v. Fankell, 520 U.S. 911, 916 (1997); Wisconsin v.
Mitchell, 508 U.S. 476, 483 (1993).  The Supreme Court of New
Jersey in State v. Lagares, 127 N.J. 20, 32 (1992), required
the prosecutor to state on the trial court record the reasons
for seeking an extended sentence.  The trial court possesses
the ultimate power to grant the extended sentence or to deny
it if the defendant "clearly and convincingly" demonstrates
the prosecution's motion was an "arbitral and capricious
exercise of prosecutorial discretion."  Id. at 33.  The
extended term, however, "may be" waived by the prosecutor
pursuant to the factors in the guidelines set forth by the
Attorney General's Office.  State v. Kirk, 145 N.J. 159, 168
(1996).

In this case, the State moved for an extended term and
did not elect to waive the extended term.  Although the
prosecutor did not state on the record the State's reason for
its motion, the court appears to have stated the reason on
behalf of the State, "based on the nature of this event as
well as the prior intent to distribute." (6/9/00 Tr. at
13:15-16.)  Critically, the trial court then asked Petitioner
to be heard regarding the motion.  Petitioner's counsel could
have tried to demonstrate to the court that the State's
motion was "arbitral and capricious"; however, defense

17

counsel conceded that Petitioner was eligible for an extended term.[1]  Because of Petitioner's prior conviction and his concession, the trial court reasonably granted the motion for an extended term.  Therefore, Petitioner's third point lacks merit.

Point IV.  <u>The fifteen year sentence is excessive.</u>

In his fourth point, Petitioner contends that the fifteen year sentence with five year parol disqualifier is excessive given the mitigating versus aggravating factors enumerated in N.J.S.A. 44-1a,b.  The Court construes this to be another Fourteenth Amendment due process violation.

Throughout the history of Anglo-American jurisprudence judges have been permitted "to exercise a wide discretion" in determining the type of evidence and the term of the sentence within the limits of the statute.  <u>Williams v. People of State of New York</u>, 337 U.S. 241, 246 (1949);  <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 481 (2000).  The applicable statute, N.J.S.A. 2C:44-1f sets out a presumptive term of seven years for a second-degree crime;  however, it leaves the sentencing court the discretion to deviate from the presumptive term if there is a preponderance of aggravating or mitigating

---

[1]Petitioner did not raise the issue of ineffectiveness of counsel in this petition. However, the issue was raised in the sentencing hearing and also in his PCR motion, which is still pending on appeal before the N.J. Supreme Court.

factors.   In light of Petitioner's extensive criminal
history, it was reasonable for the sentencing court to
deviate from the presumptive term and impose the fifteen year
sentence.   Therefore, the deference the Appellate Division
demonstrated to the trial court's sentence was consistent
with the Supreme Court's precedent of allowing the sentencing
judge to use discretion within the statutorily permitted
range.

Point V.   The second extended term imposed is
            illegal.

Petitioner's last point of contention alleges that the
trial court illegally imposed the second extended term
pursuant to N.J.S.A 2C:44-5(a), even though the second term
runs concurrently with the first.   Because Petitioner was
convicted of two drug related offenses, and each carry an
extended sentence term, the sentencing was proper.
Petitioner argues no federal statute or constitutional
violation.   Therefore, the Court has no power to review the
trial court's decision pursuant to § 2254.

Point VI.   The Persistent Offender Statute is
             unconstitutional.

In his pro se supplemental brief, Petitioner argued
unsuccessfully that pursuant to Apprendi the New Jersey
Persistent Offender Statute, N.J.S.A. 2C:44-3a, is

unconstitutional.  Under Apprendi, "other than the fact of a
prior conviction, any fact that increases the penalty for a
crime beyond the prescribed statutory maximum must be
submitted to a jury, and proven beyond a reasonable doubt."
530 U.S. at 490; U.S. v. Booker, 125 S.Ct.738, 756 (2005)
("Any fact ... necessary to support a sentence exceeding the
maximum authorized by the facts ... must be admitted by the
defendant or proved to a jury beyond a reasonable doubt").

Petitioner claims that if the Persistent Offender
Statute only requires a prior conviction to enhance a
sentence then it would be constitutional.  But because the
sentencing judge must consider other aggravating factors when
deciding to enhance a sentence it violates Apprendi.
Furthermore, Petitioner claims the statute double counts his
prior convictions because they were used to qualify him as a
persistent offender and again to determine the duration of
his sentence. Petitioner's last argument is without merit.

For a second degree crime N.J.S.A. 2C:43-6 permits a
sentence between five to ten years.  The presumptive term is
the seven years, listed in N.J.S.A. 2C:44-1f.  Because
Petitioner has prior convictions for intent to distribute an
illegal substance, however, he is subject to a mandatory
extended term under the Persistent Offender Statute.
N.J.S.A. 2C:44-3a. According to N.J.S.A. 2C:7a, a persistent

20

offender will be sentenced according to N.J.S.A. 2C:43-7a(3), which sets the sentence range for a second degree crime between ten to twenty years.  The Persistent Offender Statute is constitutional pursuant to Apprendi because it only uses prior convictions to enhance Petitioner's sentence.  Once Petitioner is subject to the extended term of ten to twenty years pursuant to N.J.S.A. 2C:43-7a(3) the sentencing judge is permitted to weigh aggravating factors and impose a sentence term within the extended statutory sentence range. See Apprendi, 530 U.S. 446, 481.  Because the sentencing judge's sentence of fifteen years did not exceed the statutory maximum, therefore it did not require a jury determination of any facts and is constitutional.

The sentencing court also did not double count Petitioner's prior convictions.  In State v. Dunbar, 108 N.J. 80, 92 (1987) the Supreme Court of New Jersey stated that "other aspects of the defendants record, which are not among the minimal conditions for determining persistent offender status ... will be relevant factors in adjusting the base extended term."  Thus, besides Petitioner's conviction for intent to distribute, other prior convictions can be used as an aggravating factor.  Because the Persistent Offender Statute only uses prior conviction for qualification and did not double count Petitioner's prior conviction the statute is

21

constitutional.

IV. <u>Conclusion</u>

     For the reasons stated above, the Court **denies**

Petitioner's petition for a writ of habeas corpus.


        <u>   /s/ William G. Bassler   </u>
        WILLIAM G. BASSLER, U.S.S.D.J.

DATED: July 5, 2005